IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RACHELLE RENEE PADILLA,
AKA RACHELLE RENEE ARAGON,

    Plaintiff,

v.                                                                                                          No. 13-cv-1133 SMV

CAROLYN W. COLVIN,
Acting Commissioner of Social Security Administration,

    Defendant.


## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 18] ("Motion"), filed on April 16, 2014. The Commissioner responded on June 11, 2014. [Doc. 19]. Plaintiff replied on July 7, 2014. [Doc. 20]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 11]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Motion is not well-taken and should be denied.

### Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity;" *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff applied for supplemental security income on October 29, 2009. Tr. 17. She alleged a disability-onset date of the same day. *Id.* Her claims were denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* ALJ Barry O'Melinn held a hearing on April 5, 2012, in Albuquerque, New Mexico. *Id.*

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

Plaintiff appeared with her attorney, Gary Martone. *Id.*; Tr. 33, 35. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Judith Beard. Tr. 17, 38−63.

The ALJ issued his unfavorable decision on August 3, 2012. Tr. 17–28. At step one, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. Because Plaintiff had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two. *Id.* There, he found that Plaintiff suffered from the following severe impairments: "posttraumatic stress disorder (PTSD); depression; borderline intellectual functioning; anxiety; bipolar disorder[;] and migraine headaches." Tr. 19. At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 19–20.

Because none of Plaintiff's impairments met a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 20–26. The ALJ found that

> [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can understand, carry out, and remember simple instructions and make commensurate work[-]related decisions. She can respond appropriately to supervision, co[-]workers[,] and work situations, and [she can] deal with routine changes in [the] work setting. She can maintain concentration, persistence[,] and pace for up to and including 2 hours at a time with normal breaks throughout the workday. Additionally, she can have only occasional interaction with the public[] and occasional interaction with co-workers, with no tandem tasks.

Tr. 20–21. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 26. At step five, the ALJ found that Plaintiff was able to perform jobs that exist in significant numbers in the national economy based on Plaintiff's RFC, age, education, and work experience. Tr. 27.

4

Specifically, the ALJ found that Plaintiff was able to perform the requirements of laundry worker (Dictionary of Occupational Titles ("DOT") number 361.685-018), janitor (DOT number 381.687-018), and cleaner/washer (DOT number 599.687-030).  *Id.*  Ultimately, the ALJ determined that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period, and on that basis, he denied the claims.  *Id.*  The Appeals Council denied Plaintiff's request for review on September 25, 2013.  Tr. 1−3.  Plaintiff timely filed the instant action on November 25, 2013.  [Doc. 1].

## Analysis

Plaintiff's arguments are not persuasive.  The Court finds that the ALJ applied the correct legal standards in evaluating Dr. Lev's and Dr. Walker's opinions, and such evaluations are supported by substantial evidence.  Similarly, the Court finds no error in the ALJ's evaluation of Plaintiff's migraine-related symptoms.  Accordingly, the Motion will be denied.

### I.   The Court finds no error in the ALJ's evaluation of Dr. Lev's and Dr. Walker's opinions.

Plaintiff argues that the ALJ failed to make a proper RFC finding under Social Security Ruling ("SSR") 96-8p.  [Doc. 18] at 9–10.  She explains that although the ALJ gave significant weight to the opinions of Dr. Lev and Dr. Walker, he improperly rejected portions of their opinions without explanation.  *Id.*; Tr. 26 (ALJ's weighing of the medical opinions).  The Commissioner responds that the restrictions opined by Dr. Lev and Dr. Walker are adequately reflected in the RFC, and thus, no further explanation was required.  [Doc. 19] at 4–6.

In particular, Plaintiff argues that the ALJ improperly rejected the following finding of Dr. Lev, without explanation:  "[i]f [Plaintiff] has any difficulty sustaining concentration and

5

persisting at tasks, it would be because of the instability in her mood associated with her personality disorder." Tr. 269.  Plaintiff argues that this limitation is not reflected in the RFC. [Doc. 18] at 9.  The Commissioner disagrees and points out that the RFC limits Plaintiff to maintaining concentration, persistence, and pace "for up to and including 2 hours at a time, with normal breaks throughout the workday." [Doc. 19] at 5 (quoting Tr. 21).  Plaintiff replies that this limitation is actually no limitation at all because—with normal breaks—concentration, persistence, and pace are only required for two hours at a time anyway.  [Doc. 20] at 2.  However, she cites no authority for her position.  *See id.*

Next, Plaintiff argues that the ALJ improperly rejected, without explanation, the following finding of Dr. Walker:  "[Plaintiff] may require a work setting with well[-]defined expectations and brief, superficial interactions." Tr. 274.  Plaintiff argues that these limitations are not reflected in the RFC. [Doc. 18] at 9.  The Commissioner disagrees and points out that the RFC limits Plaintiff to understanding, carrying out, and remembering "simple instructions and making commensurate work[-]related decisions." Tr. 20.  Further, the RFC limits Plaintiff to having "only occasional interaction with the public[] and occasional interaction with co-workers, with no tandem tasks." Tr. 21.  Plaintiff replies that "well-defined expectations" is not the same as "simple instructions" and that "brief, superficial interaction" is not the same as "occasional interaction . . . with no tandem tasks." [Doc. 20] at 2.  However, Plaintiff cites no authority for her position.

The Court is not persuaded by either of Plaintiff's arguments.  First, the Court finds that neither of the physician opinions she cites are opinions as to Plaintiff's functional limitations.

6

For example, Dr. Lev explained that "*[i]f* [Plaintiff] has any difficulty sustaining concentration and persisting at tasks, it *would be* because of the instability in her mood associated with her personality disorder[.]" Tr. 269 (emphasis added). This is not a finding as to the extent of any functional limitation. Insofar as it could be construed as a finding regarding Plaintiff's functional limitation, the Court finds that it is adequately reflected in the RFC. *See* Tr. 21 (limiting Plaintiff to maintaining concentration, persistence, and pace "for up to and including 2 hours at a time, with normal breaks throughout the workday."). The Court has considered Plaintiff's argument—raised for the first time in reply and, thus, waived—that the limitation to maintaining concentration, persistence, and pace "for up to and including 2 hours at a time" is really no limitation at all. *See* [Doc. 20] at 2. However, Plaintiff's argument is not convincing because it is supported by no authority.

Similarly, the Court finds no error in the ALJ's evaluation of Dr. Walker's opinion. Dr. Walker stated that "[Plaintiff] *may* require a work setting with well[-]defined expectations and brief, superficial interactions." Tr. 274 (emphasis added). However, this is not a finding as to the extent of any functional limitation. Insofar as it could be construed as a finding regarding Plaintiff's functional limitation, the Court finds that it is adequately reflected in the RFC. *See* Tr. 20–21 (limiting Plaintiff to understanding, carrying out, and remembering "simple instructions and making commensurate work[-]related decisions. . . . and to "only occasional interaction with the public[] and occasional interaction with co-workers, with no tandem tasks."). Plaintiff's argument to the contrary is not supported by any authority, and the Court does not agree.

7

## II. The ALJ's evaluation of Plaintiff's credibility as to her migraine symptoms is supported by substantial evidence.

Plaintiff next argues that the ALJ failed properly to consider Plaintiff's migraine headaches. [Doc. 18] at 10. She explains that the ALJ found her migraines to be severe at step two but then failed to make any corresponding functional limitation in the RFC and also failed to give any explanation as to the relationship between her migraines and her RFC. *Id.* at 10–11 (citing SSR 96-8p; *Hayden v. Barnhart*, 374, F.3d 986, 992 (10th Cir. 2004)); [Doc. 20] at 3. Specifically, she argues that the ALJ impermissibly failed to "discuss[] why reported symptom-related functional limitations and restrictions [could not] reasonably be accepted as consistent with the medical and other evidence."[3]  [Doc. 20] at 3 (quoting SSR 96-8p).

---

[3] To further support her position, Plaintiff points out that the VE testified that if a person with Plaintiff's RFC, age, education, and work experience could not concentrate for two hours at a time or would have more than one absence from work per month, "there would be no other work available at step five." [Doc. 18] at 11; [Doc. 20] at 3. The problem is that Plaintiff does not tie the VE's testimony to any evidence record. Plaintiff points to no evidence of record that her migraines prevent her from concentrating for two hours at a time or would cause more than one absence from work per month.

   Nevertheless, in the Court's review of the record, there is evidence that *could* support such findings. For example, in reports completed by Plaintiff or her attorney, dated between August and December, 2010, Plaintiff complained of "daily" migraines. Tr. 154 (Disability Report – Appeal, dated August 2, 2010) ("daily migraines when having severe mood swings . . . . migraines occurring daily" beginning in June of 2010); Tr. 168 (Headache Questionnaire, completed on August 23, 2010) (headaches "three to four times daily" lasting "4 to 5 hours"); *see also* Tr. 171, 177, 182 (reporting migraines and over-the-counter migraine medication with no specific frequency identified). Then, at the hearing, Plaintiff's testimony regarding the effects of her migraines was as follows:

> Q [by Attorney Martone]: Do you stay up most days without lying down?
> A:  Most of the time I stay up.  I'll take naps here and there when I get migraines and headaches and stuff.
> Q:  How often is that?
> A:  Two to three times a day or —
> Q:  That you'll lie down or rest?
> A:  Yeah, I'll rest.  Like 30-minute naps or just until my headache goes away.

Tr. 54. Later at the hearing, when the attorney questioned the VE, the VE stated that Plaintiff had "testified to lying down two to three times a day for about half an hour each time." Tr. 59. The VE confirmed that "if that happened on a consistent basis," all work would be eliminated. *Id.*  Again, as best as the Court can discern, Plaintiff's position is that the ALJ erred in failing to find Plaintiff credible as to her migraine complaints.

However, the binding authority cited by Plaintiff does not require an ALJ to identify which RFC limitations correspond to which step-two impairments. Rather, it requires proper evaluation of a plaintiff's *credibility* regarding her reported symptoms. Accordingly, it is the Commissioner's position that the ALJ satisfied SSR 96-8p when he explained how the evidence—including an evaluation of Plaintiff's credibility—supported the RFC. [Doc. 19] at 9. The Court agrees. *See Smith v. Colvin*, No. CIV-13-617-F, 2014 U.S. Dist. LEXIS 122786, *2–3, 5–7 (W.D. Okla. Sept. 3, 2014) (rejecting a similar claim based on the sufficiency of the ALJ's *credibility* analysis).

Of course, the district court cannot re-weigh the evidence and can only review an ALJ's decision to ensure that he applied the correct legal standard and that his findings are supported by substantial evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). "Credibility determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted). Boilerplate language, however, is insufficient. *Id.* Instead, "it is well settled that [ALJs] must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). Although ALJs do not have to discuss "every piece of evidence," *Clifton*, 79 F.3d at 1010, their "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler,* 68 F.3d at 391 (internal quotation marks and brackets omitted).

The Tenth Circuit Court of Appeals does not "reduce[] credibility evaluations to formulaic expressions [nor] require a formalistic factor-by-factor recitation of the evidence. So

long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000)).  Finally, where pain is the subject of the credibility dispute, the ALJ should consider such factors as:

> [1] the levels of medication and their effectiveness, [2] the extensiveness of the attempts (medical or nonmedical) to obtain relief, [3] the frequency of medical contacts, [4] the nature of daily activities, [5] subjective measures of credibility that are peculiarly within the judgment of the ALJ, [6] the motivation of and relationship between the claimant and the other witnesses, and [7] the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)).

Here, the ALJ adequately evaluated Plaintiff's credibility and sufficiently linked his credibility determination to substantial evidence. Tr. 21–26.  The ALJ indicated that he had considered all of Plaintiff's alleged symptoms and then went on to describe those symptoms, including those related to Plaintiff's migraines. Tr. 21, 24, 25.  Ultimately, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms.  Tr. 25.  But he also found that her statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the RFC.  *Id.*  The ALJ then elaborated on these findings. Tr. 25–26.

For example, he explained that Plaintiff's auditory hallucinations were controlled with medications (which corresponds to the first *Thompson* factor). Tr. 25.  He found that Plaintiff's "responses while testifying were evasive or vague" and, thus, tended to show that her testimony

"was less than entirely candid" (which corresponds to the fifth *Thompson* factor).  *Id.*  He found that Plaintiff had made "inconsistent statement(s) regarding matters relevant to the issue of disability."  *Id.*  Specifically, the ALJ found that Plaintiff's reports of suicide attempts to Dr. Lev were not consistent with her testimony at the hearing and were not consistent with the medical records from the University of New Mexico Hospital (which corresponds to the fifth and seventh *Thompson* factors).  *Id.*  The ALJ further found that Plaintiff's claims of memory loss were "unconvincing and vague" because they were inconsistent with Dr. Lev's findings and because her hearing testimony reflected "good memory" (which corresponds to the fifth and seventh *Thompson* factors).  Tr. 25–26.  The ALJ found that Plaintiff's claims of social difficulties were undercut by the fact that she was hired for a door-to-door sales job, requiring "high levels of social contact," which she left due to disputes over timesheets and not for reasons related to her alleged symptoms (which corresponds to the fourth and fifth *Thompson* factors).  Tr. 26.

The ALJ's evaluation of Plaintiff's credibility as to her migraines passes muster.  The numerous remaining findings are closely and affirmatively linked to substantial evidence, and this Court will not disturb them.  Remand on this ground is not warranted.

## Conclusion

Because Plaintiff fails to meet her burden before this Court to show either that the ALJ applied an incorrect legal standard or that his decision was not supported by substantial evidence, the Commissioner's final decision should be affirmed.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum [Doc. 18] is **DENIED**.  The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**